```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X

UNITED STATES OF AMERICA,
                                          MEMORANDUM & ORDER
         v.
                                          18-cr-257 (KAM)
RASHEDA JADUSINGH,

                    Defendant.

---------------------------------X
```

**KIYO A. MATSUMOTO, United States District Judge**:

Rasheda Jadusingh ("Ms. Jadusingh") and two co-defendants were charged in May 2018 with conspiracy to import cocaine and conspiracy to possess cocaine with intent to distribute.[1] Jury selection and trial are currently scheduled to begin on October 26, 2020. The Government previously filed motions *in limine*, which the court granted in part and denied in part. (*See* ECF No. 131, January 14, 2020 Memorandum & Order ("Jan. 14, 2020 Order").) The Government has now brought a second set of motions *in limine*. For the reasons set forth below, the Government's second motions are GRANTED.

## Standard of Review

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in*

---

[1] Both of Ms. Jadusingh's co-defendants, Damien Folkes ("Mr. Folkes") and Tassana Guthrie ("Ms. Guthrie"), have pleaded guilty in this action. Mr. Folkes filed a motion to withdraw his guilty plea, which is currently pending before this court.

*limine.*" *Highland Capital Mgmt., LP. v. Schneider*, 551 F. Supp. 2d 173, 176-77 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). Motions *in limine* "aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (quotation omitted). The trial court should only exclude evidence when it is "clearly inadmissible on all potential grounds," *United States v. Paredes*, 176 F. Supp. 2d 192, 193 (S.D.N.Y. 2001), and the ruling remains "subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the [movant's] proffer," *Luce*, 469 U.S. at 41.

The Federal Rules of Evidence provide the framework for determining the admissibility of evidence. "As a general matter, all relevant evidence is admissible . . . unless specifically excluded." *United States v. Perez*, 387 F.3d 201, 209 (2d Cir. 2004) (citing Fed. R. Evid. 402). "[E]vidence is 'relevant' if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *United States v. Abu-Jihaad*, 630 F.3d 102, 132 (2d Cir. 2010) (quoting Fed. R. Evid. 401). Relevant evidence may be excluded "if 'its probative value is substantially outweighed by a danger of . . . unfair prejudice.'" *United States v.*

2

*Bourne*, No. 08-cr-888, 2011 WL 4458846, at *12 (E.D.N.Y. Sept. 23, 2011) (quoting Fed. R. Evid. 403).

## Discussion

The Government now moves *in limine* to (1) preclude Ms. Jadusingh from introducing what it characterizes as her own self-serving hearsay statements made to law enforcement; (2) admit evidence of Ms. Jadusingh's use of a false name and a fraudulently obtained credit card; and (3) admit evidence of certain certified business records. (*See* ECF No. 153, Government's Second Motion *in Limine* ("Gov't Br.").) Ms. Jadusignh opposes all motions. (*See* ECF No. 155, Response to Motion *in Limine* ("Opp.").) For the reasons set forth below, the Court grants the Government's motions.

### I. Motion to Preclude Ms. Jadusingh's "Self-Serving Hearsay Statements"

The Government asks the Court to preclude "the introduction of the defendant's self-serving hearsay statements made during an interview with law enforcement." (Gov't Br. at 1.) The Government made a similar motion previously. The Court granted the Government's prior motion, but noted that, if the Government were to introduce any of Ms. Jadusingh's post-arrest statements, Ms. Jadusingh "could theoretically seek admission of certain post-arrest statements pursuant to the 'doctrine of completeness,'" which "permits the introduction of hearsay where

3

doing so 'is necessary to explain the admitted portion, to place it in context, or to avoid misleading the trier of fact.'" (Jan. 14, 2020 Order at 5-6 (quoting *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982).) The Court further explained that "whether any statements are admissible under the doctrine of completeness will likely become clearer as the Government specifies which portions of the post-arrest statements it intends to proffer at trial." (Jan. 14, 2020 Order at 6 n.2.)

The Government has now identified the discrete statements made by Ms. Jadusingh that it intends to introduce at trial.[2] Following Ms. Jadusingh's arrest at John F. Kennedy International Airport, where she was picking up one of her alleged co-conspirators (Ms. Guthrie), Ms. Jadusingh was interviewed by agents of the United States Department of Homeland Security. The interview was recorded by video. The Government intends to introduce the portions of the interview during which Ms. Jadusingh explained how she came to the airport that day, and during which she declined to provide her husband's name to the interviewers. (Gov't Br. at 4; *see id.*, Ex. A, at 2:1-10:9.) The Government also intends to introduce a portion of the interview during which Ms. Jadusingh told agents she was

---

[2] While hearsay is generally inadmissible under Federal Rule of Evidence 802, Ms. Jadusingh's own statements are admissible against her under Federal Rule of Evidence 801(d)(2)(A).

4

asked to pick up Ms. Guthrie by a person named "Chris." (*Id.*, Ex. A., at 15:44-16:39.) In addition, the Government intends to elicit testimony from one of the agents about a subsequent, second interview of Ms. Jadusingh, which was not recorded. (Gov't Br. at 4.) During the second interview, Ms. Jadusingh allegedly admitted that (1) "Chris" is her husband, Mr. Folkes, (2) Mr. Folkes was involved in drug trafficking, and (3) Ms. Jadusingh assisted her husband. (*Id.*)

Ms. Jadusingh argues that, for the sake of completeness, an additional portion of the videotaped interview should also be shown to the jury. (Opp. at 1-2.) Specifically, after Ms. Jadusingh declined to provide the interviewers with her husband's name, she noted that she was "having problems with [her] husband and [she didn't] want to even venture there," and, when asked if her husband was at home, she said that he spent "[m]ost of the time . . . at his mistress['s] house." (Gov't Br., Ex. A, at 10:11-31.) Ms. Jadusingh argues that this additional context "explains to a degree why she refused to give her husband's name," as "[p]ossibly she [was] afraid to suffer abuse as a result." (Opp. at 2.)

The additional statements Ms. Jadusingh seeks to introduce are not required for completeness. "The statements the Government seeks to admit . . . are related to [Ms. Jadusingh's] knowledge of other participants' involvement in the

5

[alleged conspiracy]," and Ms. Jadusingh "has not shown how her statements offering an alternative theory of the evidence are necessary to clarify or explain her statements . . . ." *United States v. Blake*, 195 F. Supp. 3d 605, 610–11 (S.D.N.Y. 2016). Nor are Ms. Jadusingh's proposed statements regarding martial difficulties related to the statements proffered by the Government regarding co-conspirators.

First, the explanation offered by Ms. Jadusingh for why these statements are required for completeness are speculative. Ms. Jadusingh argues only that the statements show that she was "[p]ossibly . . . afraid to suffer abuse . . . ." (Opp. at 2.) Statements that merely raise a possibility are not required to explain the earlier statements. Second, even assuming that Ms. Jadusingh's post hoc explanation for why she refused to provide her husband's name is correct, that explanation does not clarify the core factual question of whether Ms. Jadusingh was involved in a conspiracy. *See United States v. Lumiere*, 249 F. Supp. 3d 748, 758 (S.D.N.Y. 2017) ("the portions of the recording that [the defendant] argues were improperly excluded are post-hoc attempts . . . to minimize his own culpability"). It would be entirely possible for Ms. Jadusingh to have feared her husband, and for her to also have committed the criminal offenses with which she is charged. *See United States v. Kopp*, 562 F.3d 141, 144 (2d Cir. 2009)

6

(affirming exclusion of statements, despite the doctrine of completeness, that "had no bearing on the jury's consideration of either statute").

Accordingly, the court grants the Government's motion to preclude the introduction of any additional hearsay statements from Ms. Jadusingh's first interview.

**II. Motion to Admit Evidence of Ms. Jadusingh's Alleged Use of a False Name and a Fraudulently Obtained Credit Card**

The Government expects to introduce evidence at trial, in the form of testimony and business records, showing that Ms. Jadusingh used a fraudulent credit card under a false name to pay for the car service that took her to the airport on the day she was arrested. (Gov't Br. at 5-7.) Ms. Jadusingh argues that such evidence is inadmissible because it "has no relevance to the drug charge in the indictment." (Opp. at 2.)

"Circumstantial evidence probative of a conspiracy may include, for example, a defendant's . . . possession of items that are of essential significance to the conspiracy[.]" *United States v. Anderson*, 747 F.3d 51, 60 (2d Cir. 2014). Documents meant to conceal an individual's involvement in a conspiracy are often essential to the conspiracy, because "conspiracies are undertakings in secret[.]" *United States v. Torres*, 604 F.3d 58, 67 (2d Cir. 2010). Evidence that Ms. Jadusingh attempted to conceal her identity on the day she

7

traveled to the airport to pick up her alleged co-conspirator is, therefore, relevant to the charges against her. Moreover, "evidence of uncharged criminal activity is not considered other crimes evidence . . . if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (quoting *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir.1997)). The proffered evidence satisfies all three criteria.

Accordingly, the court grants the Government's motion to admit evidence showing that Ms. Jadusingh used a false name and a fraudulent credit card to book the car service that took her to the airport on the day she was arrested.

### III. Motion to Admit Certified Business Records

Finally, the Government seeks to introduce certain business records from corporate entities, including records from the car service Ms. Jadusingh used to take to the airport. (Gov't Br. at 7.) Ms. Jadusingh opposes the introduction of the records related to the car service, for the same reasons she opposes introduction of the evidence showing Ms. Jadusingh used a fraudulent credit card and false name to book the service. (Opp. at 3.)

The Government represents that it will obtain certifications stating that the proffered records are regularly kept in the course of the relevant businesses; the Government has provided the court and defense counsel with the certifications it has obtained thus far. (*See* Gov't Br., Ex. B.) For the reasons discussed, Ms. Jadusingh's use a false name and fraudulent credit card are relevant to and direct evidence of the charges against her. Accordingly, the corresponding business records from the car service are admissible as certified business records under Rules 803(6) and 902(11).

## Conclusion

For the reasons set forth above, the Government's second motion *in limine* is GRANTED.

**SO ORDERED.**

Dated:   Brooklyn, New York
         July 24, 2020

                                    /s/
                        Hon. Kiyo A. Matsumoto
                        United States District Judge

9